IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **LEE LOEW**, | |
| Plaintiff, | Case No. 2:19-CV-5242 |
| v. | Judge Graham |
| **REGRET, INC. ET AL.** | Magistrate Judge Jolson |
| Defendants. | |

**OPINION AND ORDER**

Plaintiff Lee Loew brings this action asserting violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* and the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), Ohio Rev. Code Chapter 4111. Loew alleges that Regret Inc., d/b/a/ Sunburst Pools ("Sunburst Pools") and Joseph Wagner, the owner of Sunburst Pools, (collectively "Defendants") violated the FLSA and OMFWSA by failing to pay him overtime pay, failing to pay him minimum wage, failing to tender pay by regular pay day, and retaliating against him. This matter is before the Court on Defendants' motion for summary judgment, Doc. 108, and motion to strike, Doc. 121. For the reasons stated below, both motions are **DENIED**.

**I.     Background**

**A. Factual Background**

Loew worked for Sunburst Pools from April 2015 to October 2019. Loew Decl. ¶ 4. Sunburst Pools is a company that sells, builds and services swimming pools and sells pool accessories at its retail store. Loew had over twenty years of experience working with and constructing swimming pools and was well suited to work for Sunburst Pools. *See* First Loew Dep. 6, 62-63.

1

The nature of the working relationship is contested. According to Loew, Wagner was insistent that Loew be hired as an employee of Sunburst Pools. First Loew Dep. 14. Despite being hired as an employee, Loew explains he was treated as an independent contractor for tax purposes because Wagner "wanted to fly under the radar with the IRS . . . ." First Loew Dep. 103 at 35-36. Wagner asserts this is a fiction, that Loew was hired as an independent contractor and was given work orally on a job-by-job basis. Wagner Aff. ¶ 6. In support, Wagner attached to his response brief an independent contractor contract which, he purports, was executed by Loew and himself. Doc. 108 at 17. The attached contract, however, is unexecuted. *See* Doc. 108-1.

Loew's responsibilities at Sunburst Pools included building, installing, and servicing swimming pools and assisting customers at the retail store. Loew Decl. ¶ 4. Loew performed these duties largely, if not always, using Sunburst Pools' tools. Loew Decl. ¶ 6; *See* Wagner Dep. 18. These tools included a Bobcat brand front loader and trailer, Craftsmen and Dewalt brand hand tools, and a Dodge brand truck. Loew Decl. ¶ 5. He was not required to purchase his own tools. Loew Decl. ¶ 6; *See* Wagner Dep. 18. Sunburst also provided Loew a key to the retail store, a company credit card, and a company phone. Wagner Dep. 64. Loew had a desk and nameplate at the retail store. Evans Dep. 54.

Neither party maintained records of the hours Loew worked. *See* Wagner Dep. 48-49. Loew estimates that he worked, on average, sixty hours per week during the on-season (April – October). Doc. 108-4 at 2. He estimates that he would arrive at the retail store by 7:00am to gather tools, arrive at his assigned jobsite by 8:00am, and work until he reached a logical stopping point or it became dark outside (between 5:00pm and 9:00pm). Doc. 108-4 at 3. Once he stopped working at his assigned jobsite, he would return to the retail store, usually for an evening meeting with Wagner which typically lasted about an hour. Doc. 108-4 at 3. If his assigned job was

completed before the end of the day, Loew would return to the retail store and assist customers, clean the store, and answer phone calls until the store closed at 6:00pm or later, depending on when lingering customers left. Doc. 108-4 at 3. He would do this Monday through Saturday. Doc. 108-4 at 2. He would also work some Sundays. Second Loew Dep. 24.

Loew was laid off in the 2015-2016 and 2016-2017 off-seasons (November – March). Doc. 116 at 10. He then worked an estimated fifty-four hours per week in the 2017-2018 and 2018-2019 off-seasons.[1] Doc. 116 at 10. During the off-seasons he worked, Loew would arrive at the retail store by 8:00am and leave around 5:00pm. Doc. 108-4 at 3. He would work at the retail store, cut wood to be used to build pools in the summer, and work on Sunburst Pools' vehicles. Second Loew Dep. 35.

Defendants refute that Loew worked the hours he asserts, Doc. 108 at 27, and that, with few exceptions, he worked at all during the off-season, Wagner Dep. 55. In support, Defendants rely on numerous affidavits from prior workers and customers who say that Loew worked fewer than eight hours per day and did not work during the winter, Doc. 108 at 27, and an affidavit from Larry Hayes, the former owner of a temporary employment service, who said that Loew approached him looking for work in fall of 2017 because he did not work in the winter, Hayes Aff. ¶ 2.

Loew's compensation is also disputed. Loew asserts he was paid a weekly salary which fluctuated based on the amount of revenue Sunburst Pools produced. Loew Decl. ¶ 11. He explains that his weekly pay is reflected through the personal checks he received from Wagner. Loew Decl. ¶ 3. Those checks, all of which are purportedly in the record, reveal that Loew's pay varied wildly

---

[1] The Court notes that the statement in Loew's brief that he was laid off during the off-seasons in 2015 and 2016 is supported by the deposition of Tina Loew, T. Loew Dep. 27, but is inconsistent with Loew's first deposition, in which he said he worked every winter except the first (2015), First Loew Dep. 24, and his second deposition, in which he said "I worked for [Sunburst Pools] for six years. Spring, winter, fall, and summer . . . ," Second Loew Dep. 100.

3

– ranging from zero to around one thousand dollars. *See* Doc. 109-5. Curiously, Loew received no checks from June 19, 2017 to August 17, 2017. *See* Docs. 109-1; 116-5 at 3-5. Loew acknowledges that Wagner would assist him financially by paying such things as his rent and utility bills but asserts that these were gifts. First Loew Dep. 58-59. The assertion that the rent payments were gifts is contradicted by Loew's subsequent deposition testimony. Second Loew Dep. 108 ("[Wagner] would not pay my rent. He would advance me money out of my pay to pay the rent and then take it out of my pay . . . No, you're right, he was paying me that way.").

Defendants assert in their reply brief that Loew's compensation was negotiated on a job-by-job basis. Doc. 119 at 14. However, Defendants' assertion is contradicted by Wagner's deposition testimony. Wagner explained that Loew was originally paid on a job-by-job basis, with the price of each job negotiated in advance. Wagner Dep. 4. But he later began paying Loew a flat rate weekly. Wagner Dep. 4-5. Defendants assert that Loew was paid through checks and other means, such as cash, rent payments, and utility payments. Doc. 108 at 52; Wagner Dep. 83.

Loew ceased working for Sunburst Pools in October 2019. Loew Decl. ¶ 4. Defendants claim that leading up to his leaving, Loew tried to undercut Sunburst Pools' prices to obtain customers for Pool Butlers, a business they allege Lowe owned, stole equipment and supplies from Sunburst Pools, and took cash from Sunburst Pools' customers without performing the work or performing the work poorly. *See* Doc. 108 at 19-23. Loew generally denies these allegations.

### B. Procedural Background

Loew filed the current action on November 26, 2019 alleging that Defendants violated the FLSA and OMFWSA by failing to pay him minimum wage and overtime pay and that Defendants further violated the OMFWSA by failing to tender pay by regular payday. Doc. 1. Loew filed an amended complaint on November 24, 2020 asserting two additional claims – that the lawsuit in

Licking County Common Pleas Court was a retaliatory action in violation of the FLSA and OMFWSA. Doc. 39 at 8-10.

Defendants filed a motion for summary judgment on April 2, 2021. Doc. 108. After the motion was fully briefed, Loew filed a notice of supplemental authority and attached a judicial opinion from the Licking County Common Pleas Court addressing Defendants' claims. Doc. 120. Defendants filed a motion to strike the notice. Doc. 121.

## II.     Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment is proper if the evidentiary materials in the record show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Longaberger Co. v. Kolt*, 586 F.3d 459, 465 (6th Cir. 2009). The moving party bears the burden of proving the absence of genuine issues of material fact and its entitlement to judgment as a matter of law, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case on which it would bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005) (citation omitted).

The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *see also Longaberger*, 586 F.3d at 465. "Only disputed material facts, those 'that might affect the outcome of the suit under the governing law,' will preclude summary judgment." *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008) (quoting *Anderson*, 477 U.S. at 248). Accordingly, the nonmoving party must present "significant probative evidence" to demonstrate

that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993) (citation omitted).

A district court considering a motion for summary judgment may not weigh evidence or make credibility determinations. *Daugherty*, 544 F.3d at 702; *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994) (citation omitted). Rather, in reviewing a motion for summary judgment, a court must determine whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52. The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *see Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009).

### III.  Analysis

**A.  FLSA Minimum Wage and Overtime Claims**

Defendants move for summary judgment on Loew's FLSA minimum wage and overtime claims, Claims I and III, asserting those claims fail for three reasons: (1) because there is no subject matter jurisdiction, (2) because Loew was an independent contractor, and (3) because Loew did not work the number of hours he claimed and was not paid less than minimum wage.[2] Doc. 108 at 36-58.

---

[2] Defendants also assert that the FLSA minimum wage and overtime claims fail because Loew's assertions are not credible. Doc. 108 at 24-27. The Court cannot make credibility determinations on summary judgment. *Daugherty*, 544 F.3d at 702.

6

1.  **Subject Matter Jurisdiction**

As an initial matter, the Court must determine whether it possesses subject matter jurisdiction over the FLSA claims. Defendants assert that the Court lacks subject matter jurisdiction because Loew cannot establish that Defendants were involved in interstate commerce. *See* Doc. 108 at 36-37. Defendants, in essence, argue that Loew cannot prove FLSA coverage, an element of which is engagement in commerce, and that the elements of FLSA coverage are jurisdictional in nature.

This argument is not original, but the Sixth Circuit has yet to consider it. Other courts, including district courts within the Sixth Circuit, have considered it and conclude that FLSA coverage is nonjurisdictional. *See, e.g., Tingting Wang v. China Wok*, No. 3:17-cv-691, 2020 WL 5593235, at *2 (N.D. Ohio Sep. 18, 2020) (citing *Gulden v. Menages, Inc.*, No. 3:14-cv-1041, 2014 WL 4232791, *2 (M.D. Tenn. Aug. 25, 2014); *Williams v. Hooah Sec. Servs.*, LLC, 729 F. Supp. 2d 1011, 1013-14 (W.D. Tenn. 2010); *Biziko v. Van Horne*, 981 F.3d 418, 420-21 (5th Cir. 2020); *Chao v. Hotel Oasis, Inc.*, 493 F.3d 26, 33 (1st Cir. 2007). Supreme Court precedent supports this conclusion. In considering Title VII, the Supreme Court explained that "when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restrictions as nonjurisdictional in character." A*rbaugh v. Y & H Corp.*, 546 U.S. 500, 515 (2006). The FLSA does not include language to suggest that Congress intended coverage to be jurisdictional. Accordingly, the Court finds that FLSA coverage is not jurisdictional.

This conclusion does not moot Defendants' arguments against FLSA coverage. Loew is still required to establish FLSA coverage to succeed on his claims. Therefore, the Court will now consider whether Loew can establish FLSA coverage sufficiently to survive summary judgment.

7

FLSA coverage comes in two flavors – enterprise and individual. *Tony & Susan Alamo Foundation v. Sec'y of Labor*, 471 U.S. 290, 295 n.8 (1985). Loew relies on enterprise coverage. Doc. 116 at 18. Enterprise coverage requires that the employee be employed by "an enterprise engaged in commerce or the production of goods for commerce." 29 U.S.C. § 206(a). "Enterprise engaged in commerce or the production of goods for commerce" means, as pertinent here, an enterprise that:

> "(i) has employees engaged in commerce or in the production of goods for commerce, or [] has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and
>
> (ii) [has an] annual gross volume of sales made or business done [] not less than $500,000 . . . ."

29 U.S.C. § 203(s)(1)(A). "Commerce" is defined as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b).

The portion of the first element commonly known as the "handling clause" is relevant here. Pursuant to the handling clause, an employer satisfies the first element if it has employees that handle goods or materials that have been moved in or produced for commerce. *See* 29 U.S.C. § 203(s)(1)(A)(i). The word "materials" is not defined in the FLSA. The Sixth Circuit has adopted a definition of materials as "tools or other articles necessary for doing or making something." *Sec'y of Lab. v. Timberline S., LLC*, 925 F.3d 838, 847-48 (6th Cir. 2019) (citation omitted). To be materials, the item "must have a significant connection with the employer's commercial activity; the business may not just somehow internally and incidentally consume the item." *Id.* at 848 (citation omitted). For example, the court in *Timberline* concluded that logging and harvesting equipment used by a logging company "plainly constitute 'materials' because the equipment is

necessary to cut down trees and transport the timber, which in turn have a significant connection to Timberline's commercial activities of harvesting and selling timber." *Id.*

Defendants assert they are entitled to summary judgment because Loew did not engage in interstate commerce. *See* Doc. 108 at 41. Loew responds that he satisfies the handling clause because materials manufactured outside of Ohio, i.e., a Bobcat brand loader and trailer, Craftsman and Dewalt branded hand tools, and a Dodge brand truck, were moved in commerce and used by Sunburst Pools to build swimming pools, a substantial part of its business. Doc. 116 at 21. Defendants reply that "there is no proof offered that the use of the equipment mentioned was used regularly and recurringly." Doc. 119 at 9.

Plaintiff's assertion that Sunburst Pools used tools manufactured outside of Ohio to perform a significant aspect of its commercial activity is plausible and Defendants have not presented any evidence to show otherwise. Therefore, Defendants have not carried their burden on summary judgment.

Defendants fare no better on the second element of enterprise coverage -- that the employer had annual gross volume of sales made or business done of not less than $500,000. Defendants admitted to having annual gross revenue exceeding $500,000 in 2016, 2017, 2018, and 2019 by failing to timely respond to a request for admissions. Loew served the request for admissions on July 28, 2020. Doc. 116-6. Pursuant to Federal Rule of Civil Procedure 36(a)(3), Defendants had until August 27, 2020 to respond. Defendants responded on September 18, 2020. Doc. 116-8. Under Federal Rule of Civil Procedure 36(b), Defendants' failure to timely respond means that the matters within the request for admissions are "conclusively established unless the court, on motion,

9

permits the admission to be withdrawn or amended." Defendants have filed no such motion with the Court.[3]

Therefore, Defendants have not carried their burden on summary judgment to show that Enterprise Coverage does not apply.

**2. Employment Status**

Defendants argue that they are entitled to summary judgment because Loew was an independent contractor to whom the FLSA does not apply. Doc. 108 at 43.

The FLSA applies only to employees. *Keller v. Miri Microsystems LLC*, 781 F.3d 799, 806 (6th Cir. 2015) (citation omitted). Under the FLSA, "employees are those who as a matter of economic reality are dependent upon the business in which they render service." *Id.* at 807 (citation omitted). The Sixth Circuit has articulated six factors to consider when applying the economic-reality test:

> 1) the permanency of the relationship between the parties; 2) the degree of skill required for the rendering of the services; 3) the worker's investment in equipment or materials for the task; 4) the worker's opportunity for profit or loss, depending upon his skill; . . . 5) the degree of the alleged employer's right to control the manner in which the work is performed[; and] . . . [6)] whether the service rendered is an integral part of the alleged employer's business.

*Id.* No single factor is determinative. *Id.*

Genuine disputes of material fact preclude summary judgment on the applicability of the economic-reality test in this case. For example, the first factor looks to the permanency of the relationship between the parties. *Id.* A continuous or indefinite relationship indicates that the

---

[3] Defendants assert that the Court should not deem the annual gross revenue admitted because "[t]he Magistrate Judge decided that the [late response] was not enough to be an admission . . . ." Doc. 108 at 42. Loew rebuts this, saying that the Magistrate Judge instructed Defendants to "move for relief regarding any discovery dispute by 11/5/2020 . . ." which Defendants failed to do. Doc 116 at 23; *See* Doc. 31. Regardless of what occurred, it is undisputed that Defendants have not yet filed a motion to withdraw or amend admission as required by the Federal Rules of Civil Procedure.

10

person is an employee. *Id.* at 808. Defendants argue that Loew's employment was on a job-by-job basis. Wagner Aff. ¶ 6; Doc. 119 at 13. If true, this means that Loew's employment lapsed at the completion of each job. Loew, on the other hand, paints himself as a long-term staple at Sunburst Pools who was paid a weekly salary regardless of the work performed. *See* Loew Decl. ¶ 11. Further, he had a desk with nameplate, store keys, a company credit card, and a company phone – things indicative of a long-term or indefinite business relationship. Evans Dep. 54; Doc. 116 at 17.

Similarly, the parties disagree on Wagner's right to control the manner in which the work was performed – the sixth factor. Wagner, in trying to paint Loew as an independent contractor, claims that "Lee was responsible to get the jobs done[,]" and that he never supervised Loew "out in the field." Wagner Dep. 15, 22. Wagner also says that Loew had no schedule. Wagner Dep. 51-52 ("There was no written-down schedule. He's not an employee."). Loew argues to the contrary. He says that Wagner had "specific ways that he wanted his pools to look when I was done, and he went out and showed me how he wanted it done." First Loew Dep. 63. Further, Loew says he would "come in here when I was told to come in here, and I left when I was told I could go home." First Loew Dep. 87-88.

The existence of these genuine disputes of material fact precludes the Court from making a determination on summary judgment on whether Loew was an employee or independent contractor.

### 3. Dispute as to Hours Worked

Defendants assert they are entitled to summary judgment because Loew's estimate of the hours he worked is unreliable. Doc. 108 at 50.

11

An employee asserting FLSA violations "has the burden of proving that he performed work for which he was not properly compensated." *Viet v. Le*, 951 F.3d 818, 822 (6th Cir. 2020) (citation omitted). Generally, this burden is easily satisfied by obtaining records from the employer, who is required under the FLSA to keep records of wages and hours of employment. *See Andersons v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946); 29 U.S.C. § 211(c). Employees bringing FLSA claims are not to be penalized if those records are not kept. *Id.* at 687. Instead, the employee's burden is lightened. First, the employee must show by a preponderance of the evidence that "he has in fact performed the work for which he was improperly compensated." *Id.; Viet*, 951 F.3d at 822. Second, the employee must "produce[] sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id.* If the employee satisfies this burden, the employer must present "evidence of the precise amount of work performed or [] evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Id.* at 687-88.

An employee can establish that they were improperly compensated by providing a detailed estimate of hours typically worked. *See Viet*, 951 F.3d at 823. For example, the Sixth Circuit held that a plaintiff's FLSA claim survived summary judgment where he presented testimony that he typically worked 7:30am to 6:30pm or 7:00pm on weekdays, 7:30am to 4:30pm or 5:00pm on Saturdays, and occasional Sundays. *Moran v. Al Basit LLC*, 788 F.3d 201, 205 (6th Cir. 2015). In contrast, the Sixth Circuit in *Viet* found that the plaintiff's conclusory allegation that he typically worked over 60 hours per week was inadequate to survive summary judgment. 951 F.3d at 824-25.

Loew seeks to establish that Defendants failed to pay him minimum wage and overtime pay by showing that the amount of pay he received from Defendants through checks was

12

insufficient based on his estimate of the hours he worked. More specifically, he claims he worked 7:00am to between 5:00pm and 9:00pm six days a week during the on-season and 8:00am to 5:00pm six days a week during some of the off-seasons. Doc. 108-4 at 2-3.

Defendants argue that Loew's estimation of hours worked is fabricated, inconsistent with Loew's tax documents, and contrary to statements provided in several affidavits. Doc. 108 at 50-58. They also claim that Loew's calculation of the wages is incorrect because they do not account for the other ways he was paid, such as cash, payment of rent and utilities, and access to the company credit card. Doc. 108 at 52.

As Defendants' arguments reveal, both the hours Loew worked and the amount he was paid are subject to genuine disputes of material fact.[4] Loew's testimony alone is adequate for his claims to survive summary judgment. *See Moran*, 788 F.3d at 205-06. Therefore, Defendants have failed to establish that they are entitled to summary judgment on Leow's FLSA minimum wage and overtime claims, Claims I and III.

### B. OMFWSA Minimum Wage and Overtime Claims

Defendants move for summary judgment on Loew's claims that Defendants failed to pay minimum wage and overtime pay in violation of the OMFWSA, Claims II and IV.[5] Doc. 108 at 58. Defendants assert that these Ohio-law claims fail for the same reasons Loew's FLSA claims fail. Doc. 108 at 58-59.

"Courts have uniformly held that Ohio's wage and hour law should be interpreted in accordance with the FLSA." *Mitchell v. Abercrombie & Fitch, Co.*, 428 F. Supp. 2d 725, 732 (S.D.

---

[4] The Court notes that Loew does admit that he received advances from his weekly checks for rent. Second Loew Dep. 108. However, Defendants have not shown that those advances are not included in the checks on which Loew relies to calculate the amount of compensation he received.

[5] Despite purporting to move for summary judgment on all of Loew's claims, Doc. 108 at 2, Defendants make no mention of Claim V of Loew's amended complaint, failure to tender pay by regular payday.

Ohio 2006), aff'd, 225 F. App'x 362 (6th Cir. 2007) (citation omitted). Therefore, Loew's minimum wage and overtime claims based on OMFWSA survive summary judgment for the same reasons as the FLSA claims.

### C. Retaliation

Loew's retaliation claims are premised on Sunburst Pool's conduct after the current action was filed. The current action was filed on November 26, 2019. In an email dated February 13, 2020, Defendants' counsel informed Loew's counsel that "Lee knows what my client is like and that when he gets all excited about something that the whole situation is becoming a runaway train. He is willing to let it go but now he is getting upset over this lawsuit. So your client can continue with the lawsuit but there will be consequences for him and I see no realistic way he is going to get anything out of it." Doc. 116-12 at 3.

On September 24, 2020, Sunburst Pools filed a lawsuit against Loew and his wife, Tina Loew, in the Licking County Common Pleas Court asserting seven claims: defamation, tortious interference with contract, breach of contract, conversion and replevin, fraud, invasion of privacy, and intentional infliction of emotional distress. Loew then, on November 24, 2020, filed an amended complaint in the present litigation asserting two additional claims – that the lawsuit in Licking County Common Pleas Court was a retaliatory action in violation of the FLSA and OMFWSA. Doc. 39 at 8-10.

On October 5, 2021, The Licking County Common Pleas Court granted summary judgment in favor of Loew and his wife on all claims but conversion and replevin. Doc. 120-1 at 28-28. In doing so, that court noted "[a]s evidenced in this opinion, Defendants [Loew and his wife], at a minimum, have valid arguments that the majority of Plaintiffs' claims are not warranted under

14

existing law and are not supported by a good faith argument for modification of the existing law or the establishment of new law." Doc. 120-1 at 28.

Defendants move for summary judgment on Loew's retaliation claims, Claims VI and VII, on the ground that he failed to "prove that the intention of filing the state action was to discriminate against him in the federal lawsuit." [6] Doc. 108 at 62.

### 1. Motion to Strike

As an initial matter, Defendants move for the Court to strike the filing of the Licking County Common Pleas Court's opinion. Doc. 121. They assert that the opinion should be stricken because it was submitted after the deadline to complete summary judgment briefing, is not relevant, and is not binding authority. Doc. 121 at 2. Federal Rule of Civil Procedure 12(f) authorizes a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Granting a motion to strike is "a drastic remedy which is seldom granted absent a showing of real prejudice to the moving party." *Hughes v. Lavender*, No. 2:10-CV-674, 2011 WL 2945843, at *2 (S.D. Ohio July 20, 2011) (citation omitted).

The Court will consider the Licking County Common Pleas Court's opinion. The Licking County Common Pleas Court is in a position to evaluate the validity of Defendants' lawsuit. That evaluation is relevant, though not determinative, to whether that lawsuit constitutes retaliation in violation of the FLSA and OMFWSA. Further, the Court's consideration of the opinion will not prejudice Defendants because Defendants had and exercised the opportunity to respond to the filing while requesting it be stricken. Therefore, Defendants' motion to strike, Doc. 121, is **DENIED**.

---

[6] Defendants also argued, assuming that the Court would grant summary judgment on Loew's minimum wage and overtime claims, that a retaliation clam cannot survive independently. Doc. 108 at 62. The Court did not grant summary judgment on the minimum wage and overtime claims, rendering this argument moot.

15

2. **Summary Judgment Analysis**

It is unlawful under the FLSA and OMFWSA to discriminate against an employee because the employee instituted a proceeding. 29 U.S.C. § 215(a)(3); Ohio Rev. Code § 4111.13(B). A claim for retaliation under both laws requires that: (1) the employee engaged in a protected activity under the FLSA; (2) the exercise of his rights was known by the employer; (3) thereafter, the employer took an adverse employment action against the employee; and (4) there is a causal connection between the protected activity and the adverse employment action. *Adair v. Charter Cty. of Wayne*, 452 F.3d 482, 489 (6th Cir. 2006) (citation omitted); *see Murray v. Mary Glynn Homes, Inc.*, No. 1:11 CV 00532, 2013 WL 4054595, at *16 (N.D. Ohio Aug. 12, 2013). "If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to set forth a legitimate, non-discriminatory reason for the adverse employment action." *Id.* If the defendant does so, the plaintiff must prove by a preponderance of the evidence that the defendant's proffered reasons were merely pretext for illegal discrimination. *Id.*

Lawsuits against former employees can constitute retaliation. The Supreme Court's consideration of Title VII is informative on this principle. The Supreme Court has found that Title VII's similar antiretaliation provision "extends beyond workplace-related or employment-related retaliatory acts and harm." *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 67 (2006). To be an adverse employment action, the Supreme Court found, the action need only be materially adverse, meaning it would have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68 (internal quotation and citation omitted). This principle applies to the FLSA in the same way as Title VII. *See Id.* at 66 ("Congress has provided similar kinds of protection from retaliation in comparable statues without any judicial suggestion that those

16

provisions are limited to the conduct prohibited by the primary substantive provisions."); *Cruz v. Don Pancho Market, LLC*, 167 F. Supp. 3d 902, 910 (W.D. Mich. 2016).

Now to the dispute in this case -- under what circumstances a lawsuit is materially adverse. Defendants' position is that an employer's lawsuit is materially adverse if it was brought for the purpose of retaliation. Doc. 108 at 62. Loew takes the position that a lawsuit is materially adverse when any claim in the lawsuit has no reasonable basis in law or fact. Doc. 116 at 39.

The Sixth Circuit has yet to decide when a lawsuit is materially adverse, but district courts within the Circuit generally require that the lawsuit be filed in bad faith and motivated by retaliation. *See Nasrallah v. Lakefront Lines, Inc.*, No. 1:17 CV 69, 2017 WL 2291657, at *8 (N.D. Ohio May 25, 2017) (citation omitted).

Loew's retaliation claims survive summary judgment regardless of which of the above tests apply. On February 13, 2020, after Loew filed the present action, Defendants' counsel emailed Loew's counsel regarding potential criminal charges stating that "when [Wagner] gets all excited about that the whole situation is becoming a runaway train. He was willing to let it go but **now he is getting upset over this lawsuit**. So your client can continue with the lawsuit but **there will be consequences for him** and I see no realistic way he is going to get anything out of it."[7] Doc. 116-12 at 3 (emphasis added). Then, about seven months later, Sunburst Pools filed its lawsuit against Loew and his wife in the Licking County Common Pleas Court. A factfinder could draw a

---

[7] Defendants object to the Court considering the email from Defendants' counsel for a few reasons, namely that an email from an attorney is not evidence, that the email was not produced in discovery, and that the email is inadmissible as a settlement discussion under Fed. R. Evid. 408. Doc. 119 at 21-22. They provide no support for asserting that an email is not evidence merely because it was created by an attorney, nor for the position that Loew was required to produce an email Defendants counsel created to Defendants. As for Rule 408, the Rule provides that statements made during compromise negotiations are not admissible to prove or disprove the validity or amount of a dispute claim or to impeach by prior inconsistent statement or a contradiction. It "only bars the use of compromise evidence to prove the validity or invalidity of the claim that was the subject of the compromise, not some other claim." *Uforma/Shelby Bus. Forms, Inc. v. N.L.R.B.*, 111 F.3d 1284, 1293-94 (6th Cir. 1997). Here, the email was in relation to the claims raised in Loew's original complaint. Loew now seek to use the email as evidence relating to the entirely different retaliation claims that were added to the amended complaint. The email is admissible for this purpose.

reasonable inference from Defendants' email that they had a retaliatory purpose in filing the state action.

Since the filing of that lawsuit, the Licking County Common Pleas Court has dismissed most of Defendants' causes of action.[8] Doc. 120-1. That court noted "[a]s evidenced in this opinion, Defendants [Loew and his wife], at a minimum, have valid arguments that the majority of Plaintiffs' claims are not warranted under existing law and are not supported by a good faith argument for modification of the existing law or the establishment of new law." Doc. 120-1 at 28. While not outcome determinative, Licking County Common Pleas Court's decision would support a finding that the subject claims had no reasonable basis in law.

A jury viewing these facts in a light most favorable to Loew could conclude that Defendants' lawsuit was brought for the purpose of retaliation, contained claims that had no reasonable basis in law or fact, and was filed in bad faith and motivated by retaliation. Therefore, Defendants are not entitled to summary judgment on Claims VI and VII.

---

[8] Wagner was added as a plaintiff in the Licking County lawsuit after the complaint was filed.

## IV. Conclusion

For the above reasons, Defendants' motion for summary judgment, Doc. 108, and motion to strike, Doc. 121, are **DENIED**.

During the pendency of the motion for summary judgment the parties filed cross motions for sanctions, the briefing for which was stayed pending resolution of Defendants' motion for summary judgment. In light of this opinion, both motions for sanctions, Docs. 110 and 115, are **DENIED WITHOUT PREJUDICE**. The parties may refile motions for sanctions if they believe, after thoughtful consideration, that such a motion is warranted.

**IT IS SO ORDERED**.

s/ James L. Graham
JAMES L. GRAHAM
United States District Judge

DATE: March 10, 2022